IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ZORAIDA PEÑA CANAL,<br><br>      Plaintiff,<br><br>  v.<br><br>MABELLE DE LA ROSA DANN, TERESA VITTET DE LA ROSA, and DOES 1 to 10, inclusive,<br><br>      Defendants.<br>_____/ | No. 09-03366 CW<br><br>ORDER GRANTING PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT |

    Plaintiff Zoraida Peña Cenal brings a Motion for Default Judgment seeking entry of default judgment against Defendants Mabelle de la Rosa Dann and Teresa Vittet de la Rosa. Defendants have not filed an opposition to the motion. The motion was set for a hearing on August 26, 2010 but Defendants did not appear. Having considered all of the papers filed by Plaintiff, the Court GRANTS Plaintiff's motion.

## BACKGROUND

    From July, 2006 to April, 2008, Peña Canal worked for Dann for fifteen hours a day, seven days a week, caring for Dann's three young children and cooking and cleaning for the household. Comp. ¶ 22. Dann's relationship with Peña Canal began in 2002, when Peña Canal was living in Peru and working as a child care provider for

Dann's sister, Martha de la Rosa.  Id. ¶ 16.  Between 2002 and 2006, Peña Canal and Dann, who lived in the United States, spoke numerous times about the possibility that Dann would hire Peña Canal to work as a day care provider for Dann's children in the United States.  Id. ¶ 17.  Dann promised Peña Canal that she would be paid $600 per month plus free room and board in exchange for working five days per week during regular business hours.  Id. ¶ 18.  Dann also promised Peña Canal that she would have a private bedroom, bathroom and comfortable living conditions.  Id.  Peña Canal agreed to come to the United States based on these promises.

Unbeknownst to Peña Canal, Dann had no intention of paying Peñal Canal for her work.  Id. ¶ 21.  Dann's promises of compensation and reasonable work accommodations were false.  Id.  When Peña Canal moved to the United States in June, 2006, she lived with Dann, Dann's three children, and the children's grandmother, Vittet de la Rosa in Vittet de la Rosa's Walnut Creek apartment.  Id. ¶ 23.  She was immediately put to work as a full-time nanny, maid and cook for the children, Dann and Vittet de la Rosa.  Id.

In September, 2006, Dann moved her children and Peña Canal to a two-bedroom apartment in Walnut Creek.  Id. ¶ 25.  One bedroom was for the three children and the other was for Dann.  Id.  Peña Canal slept in the living room where she had no personal space or privacy.  Id.  She slept on the living room floor on a folding foam pad.  Id.

Peña Canal's typical work day began at 6:00 a.m. when she cooked breakfast for the family, and ended around 9:00 p.m. when

2

she finished washing the dishes for the meals she had cooked for the family.  Id. ¶ 26.  She spent her days cooking, cleaning, taking care of the children, and sometimes even working for Dann's real estate business.  Id.

For all of this work, Dann paid Peña Canal only once.  On Christmas day in 2006, Dann gave Peña Canal $100.  When Peña Canal asked if the money was wages for her work, Dann told her that it was a gift.  Id. ¶ 27.  Rather than pay Peña Canal, Dann told her that she owed Dann money and needed to continue to work for free to pay off this debt.  Id.  At one point, Dann told Peña Canal that she owed Dann over $13,000.  Id.

Over the years, Dann repeatedly insulted and berated Peña Canal if her work was not done to Dann's satisfaction.  Id. ¶ 30.  If Peña Canal responded to these insults in any way, Dann would accuse her of not being sufficiently humble, obedient and grateful.  Id.

Dann attempted to control every aspect of Peña Canal's life.  Dann held her visa, passport and Peruvian identification card.  Id. ¶ 31.  Whenever Dann left the apartment, she took the passport with her in a briefcase.  Id.  The few times that Peña Canal questioned her treatment, Dann threatened her with deportation and arrest by telling her that she was illegally in the United States.  Id.  Peña Canal was afraid that she could be arrested at any time.  Id.

Dann also restricted Peña Canal's communication and movement.  Id. ¶ 32.  Dann isolated Peña Canal from individuals that might assist her.  Id.  Dann prohibited Peña Canal from watching Spanish language television and listening to the radio.  Id. ¶ 33.  She

3

even destroyed the radio Peña Canal used to listen to Spanish-language news and music. Id. Dann also kept close count of the amount of food Peña Canal ate to ensure that she did not eat more than "the small amount allotted to her each day." Id. ¶ 34.

In March, 2008, Dann falsely accused Peña Canal of stealing money from her purse. Id. ¶ 35. She screamed at and physically assaulted Peña Canal. Id. Later in March, Dann insisted that Peña Canal sign a document, which falsely acknowledged that she had been paid for her work during her time with Dann. Id. 36. The following month, with the "help of several good Samaritans," Peña Canal was able to escape Dann's house and report her situation to the authorities. Id. 38.

Shortly after Peña Canal escaped, the U.S. Attorney charged Dann with five counts: forced labor, unlawful use of documents in furtherance of servitude, harboring an illegal alien for private financial gain, visa fraud and conspiracy to commit visa fraud. On October 8, 2009, a jury convicted her on all counts. The Court sentenced her to sixty months in prison and three years of supervised release, and ordered her to pay $123,740.34 in restitution. This restitution amount was based upon the government's calculation, which was derived from data submitted from the federal government's Foreign Labor Certification Program, as evidence of the value of Peña Canal's labor during the period at issue. The award also included $14,400 in future medical treatment for Peña Canal.

The complaint in the present civil case was filed on July 22, 2009 and served on Defendants Dann and Vittet de la Rosa on

4

September 16, 2009.  Peña Canal alleges the following claims against both Defendants: (1) violation of the Trafficking Victims Protection Act, 18 U.S.C. § 1589 (Forced Labor) and 18 U.S.C. § 1590 (Trafficking Into Servitude); (2) violation of California Civil Code § 52.5; (3) violation of the Thirteenth Amendment to the United States Constitution; (4) violation of the Fair Labor Standards Act; (5) violations of over twenty provisions of the California Labor Code and relevant Wage Orders issued by the Industrial Welfare Commission of the California Department of Labor Standards Enforcement; (6) intentional infliction of emotional distress; (7) negligent infliction of emotional distress; and (8) violation of Business & Professions Code section 17200 et seq.  Peña Canal asserts the following claims against Defendant Dann only: (1) fraudulent misrepresentation; (2) negligent misrepresentation; (3) breach of contract; and (4) breach of the implied covenant of good faith and fair dealing.

Neither Defendant has appeared, answered or responded in any way.  On May 18, 2010, the clerk of the court entered default against Defendants.  Peña Canal now moves for a default judgment.

LEGAL STANDARD

Pursuant to Rule 55(b)(2) of the Federal Rules of Civil Procedure, the court may enter a default judgment where the clerk, under Rule 55(a), has previously entered the party's default based upon failure to plead or otherwise defend the action.  Fed. R. Civ. P. 55(b).  A defendant's default, however, does not automatically entitle the plaintiff to a court-ordered default judgment.  Draper v. Coombs, 792 F.2d 915, 924-25 (9th Cir. 1986).  The district

5

court has discretion in its decision to grant or deny relief upon an application for default judgment. Aldabe v. Aldabe, 616 F.2d 1089, 1092 (9th Cir. 1980). The court may consider the following factors in deciding whether to enter a default judgment:

> (1) the possibility of prejudice to the plaintiff, (2) the merits of plaintiff's substantive claim, (3) the sufficiency of the complaint, (4) the sum of money at stake in the action; (5) the possibility of a dispute concerning material facts; (6) whether the default was due to excusable neglect, and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits.

Eitel v. McCool, 782 F.2d 1470, 1471-72 (9th Cir. 1986).

In considering the sufficiency of the complaint and the merits of the plaintiff's substantive claims, facts alleged in the complaint not relating to damages are deemed to be true upon default. Geddes v. United Fin. Group, 559 F.2d 557, 560 (9th Cir. 1977); Fed. R. Civ. P. 8(d). "The district court is not required to make detailed findings of fact." Fair Housing of Marin v. Combs, 285 F.3d 899, 906 (9th Cir. 2002). On the other hand, a defendant is not held to admit facts that are not well-pleaded or to admit conclusions of law. Nishimatsu Constr. Co. v. Houston Nat'l Bank, 515 F.2d 1200, 1206 (5th Cir. 1975). As a result, where the allegations in a complaint are not "well-pleaded," liability is not established by virtue of the defendant's default and default judgment should not be entered. Id.

Damages or other forms of relief awarded are constrained by the rule that judgment by default "must not be different in kind from, or exceed in amount, what is demanded in the [complaint]." Fed. R. Civ. P. 54(c).

DISCUSSION

I. Eitel Factors

    A.   Possibility of Prejudice to Plaintiff

To the extent that Defendants Dann and Vittet de la Rosa have failed to appear in and otherwise defend this action, Peña Canal will be left without a remedy if default judgment is not entered in her favor.

    B.   Excusable Neglect

There is no evidence in the record that Defendants' failure to appear and otherwise defend was the result of excusable neglect. Defendants failed to appear after being served with the complaint in this action, which indicates that their failure to appear was willful. The factor favors entry of default judgment.

    C.   Substantive Merits and Sufficiency of the Complaint

After thoroughly reviewing Peña Canal's complaint, the Court finds that the well-pleaded allegations state claims for which relief can be granted. Accepting the factual allegations of the complaint as true, Peña Canal has demonstrated that Defendants violated all of the federal and state statutes and the state common law claims alleged therein.

    D.   Other Eitel Factors

Although there is a large sum of money at stake in the action and the strong policy underlying the Federal Rules of Civil Procedure favors a decision on the merits, on balance, the Eitel factors weigh in favor of granting default judgment.

II. Damages

Having determined that Peña Canal is entitled to entry of

7

default judgment on her claims, the Court must determine the amount of damages to which she is entitled. Peña Canal is entitled to an award of compensatory damages, consisting of both the value of her wages and additional damages attributable to the tortious conduct she endured. Peña Canal has submitted persuasive evidence that a fair hourly wage for her work was $23.70. Shenker Decl. ¶¶ 7-10; Avila Decl., Ex. B. Assuming this hourly wage, and including applicable penalties under the California Labor Code, Dann owes Peña Canal $340,746.75. Because Peña Canal worked for Vittet de la Rosa from July to mid-September of 2006, Vittet de la Rosa is jointly and severally liable for the wages during that time period, $22,858.65. See Avila Decl, Ex. B. The Court also awards $92,400 in compensatory damages for the emotional distress and other tort damages caused by Dann. Fukushima Decl. ¶¶ 7-11. There is little doubt that Dann's conduct will have lasting emotional and mental health effects on Peña Canal.[1]

Peña Canal is also entitled to punitive damages under several of her state and federal causes of action. See e.g., Cal. Civ. Code §§ 52.5(b) and 3294(a); U.S. Const. amend. XIII; 18 U.S.C. § 1595. Here, Dann acted with a conscious disregard for Peña Canal's right to be free from involuntary servitude and she intentionally misrepresented facts for the purpose of depriving her

---

[1] Peña Canal seeks $340,746.75 in restitution. However, awarding $340,746.75 in restitution in addition to $433,146.75 in compensatory damages ($340,746.75 in wages plus $92,400 for emotional distress) would constitute a double award. Further, because the Court required Dann to pay $123,740.34 in restitution to Peña Canal as part of her criminal sentence, the compensatory damages award against Dann may be offset by this amount.

8

of this right. The Court concludes that a punitive damages award in an amount equal to her compensatory damages is justified in light of Dann's disregard of Peña Canal's basic rights.

Plaintiffs' attorneys are also entitled to an award of reasonable fees. See 18 U.S.C. § 1595; Cal. Civ. Code § 52.5(f); Cal. Labor Code §§ 1194, 1197, 218.5, 218.6. The Court will determine a reasonable amount of fees once Plaintiff submits such supporting evidence.

## CONCLUSION

For the foregoing reasons, the Court grants Peña Canal's motion for default judgment against Defendants Mabelle de la Rosa Dann and Teresa Vittet de la Rosa. The Court awards Peña Canal $618,812.82 in damages.

IT IS SO ORDERED.

Dated: 09/02/10

CLAUDIA WILKEN
United States District Judge